**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vicki Jo Fuhlman, | No. CV-18-00091-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Vicki Jo Fuhlman brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises six issues on appeal: 1) the Administrative Law Judge ("ALJ") failed to perform a proper analysis under SSR 13-2p to determine whether Plaintiff's substance abuse was material to the determination of disability; 2) the ALJ failed to analyze Plaintiff's medically determinable impairment of PTSD; (3) the ALJ failed to perform a proper analysis of the C criteria of the 12.00 Listings of Impairments; 4) the ALJ failed to account for limitations caused by Plaintiff's physical impairments; 5) the ALJ gave improper weight to Dr. Marks's consultative examiner opinion; and 6) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's testimony regarding her social functioning. (Doc. 17).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 17, 22, & 23). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. §

636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

## I. Procedural History

Plaintiff filed a Title XVI application for social security disability benefits on October 16, 2015. (Administrative Record ("AR") 126). Plaintiff alleged disability beginning on October 1, 2015 based on hepatitis C, blindness in left eye, and shoulder and liver problems. (AR 50). Plaintiff's application was denied upon initial review (AR 59) and on reconsideration (AR 60). A hearing was held on November 8, 2017 (AR 27), after which ALJ Peter Baum found that Plaintiff was not disabled because she could perform work existing in the national economy. (AR 21). On January 30, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

## II. Factual History[1]

Plaintiff was born on June 27, 1965, making her 50 years old at the AOD of her disability. (AR 50). She has a tenth-grade education and last worked as a seasonal painter in 2002 when business slowed down. (AR 150–51).

### A. Treating Physicians

Plaintiff was seen at Banner UMC on January 14, 2016 and reported low back ache for several months, growth on toe for several months to years, and requested mental health services. (AR 251). On exam Plaintiff had normal ROM, normal gait, and normal mood and affect, and a dilated pupil due to trauma. (AR 253). She was referred to ophthalmology for her eye, cryotherapy for her wart, and prescribed naproxen for pain. (AR 254).

On January 29, 2016 Plaintiff had cryotherapy for her wart. (AR 255–57).

On February 24, 2016 had cryotherapy again. (AR 293–95). She also had low back pain and reported ibuprofen had been effective in the past. (AR 293). On exam she had normal ROM and 800 mg ibuprofen was prescribed. (AR 295).

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

On April 29, 2016 Plaintiff had cryotherapy and reported her wart was responding well to treatment. (AR 363).

On July 15, 2016 Plaintiff was seen for a follow-up for her wart and reported back pain for two days. (AR 422). Findings on exam were normal and the assessment was apparent musculoskeletal strain. (AR 424).

On August 8, 2016 Plaintiff received cryotherapy for her wart and reported it was painful with every step. (AR 426).

On August 31, 2016 Plaintiff reported cryotherapy was effective, she was using duct tape as instructed, and the wart was significantly smaller and not causing her pain. (AR 430). The assessment was wart significantly improved and continue to use duct tape until completely resolved. (AR 433).

On October 3, 2016 Plaintiff had cryotherapy. (AR 438).

On October 26, 2916 Plaintiff had cryotherapy and reported her wart shrank dramatically and she had no pain. (AR 440).

On December 7, 2016 Plaintiff had cryotherapy and her wart was significantly improved. (AR 447).

On January 31, 2017 Plaintiff reported significant improvement of her wart and very mild discomfort after walking long distances. (AR 448).

On March 9, 2017 Plaintiff had cryotherapy and reported she was very pleased with the degree of improvement of her wart and had no other concerns. (AR 452, 455).

On April 10, 2017 Plaintiff had cryotherapy and reported significant improvement with taping and soaking. (AR 457, 459).

At various appointments at Banner UMC, Plaintiff was documented to have a normal mood and affect (AR 233, 257, 295, 365, 424, 428, 432, 443, 447, 451, 455, 459) and was not nervous or anxious (AR 232).

An October 2, 2017 RFC Assessment from Dr. Wang states that Plaintiff had a corneal transplant and has blurry vision in her left eye that would rarely interfere with her attention and concentration at work, and that she had no other limitations from a visual

status. (AR 610–11).

Plaintiff received mental health services at Pathways of Arizona. At her intake assessment on January 20, 2016 Plaintiff reported pain in her back, knee, and shoulder, numb fingers, problems sleeping, past mental health services at COPE, homelessness, history of rape and abusive relationships, and depression. (AR 344–46). On exam Plaintiff was cooperative, anxious, depressed, and restless, with adequate attention. (AR 349). She drinks a 12-pack of beer daily and uses marijuana to feel better. (AR 350).

At a psychiatric evaluation on February 2, 2016 Plaintiff reported trauma including her father's death, emotionally and physically abusive relationships, and sexual assault. (AR 340). She also reported constant anxiety, exaggerated startle reflex and hypervigilance, flashbacks of trauma 1-2 times a week, and nightmares 3 times a week. She snaps and starts screaming and throwing things, has poor sleep, poor motivation, and drinks 12 beers a day to deal with her emotions. Plaintiff said her strengths were that she was a people person and loves animals. (AR 341). On exam she was alert and cooperative with labile affect. The diagnosis was PTSD, alcohol use, and cannabis use, and Plaintiff was prescribed Trazodone and Escitalopram. (AR 342).

Progress notes document the following:

On February 22, 2016 Plaintiff was anxious with congruent mood; she requested help with housing and did not feel she needed counseling. (AR 562).

On March 1, 2016 Plaintiff was alert, cooperative, calm, and occasionally teary. (AR 337). She reported her medication was not working, anxiety 8/10, depression 10/10, and increased irritability. She cut down to 8-10 beers per day.

On March 30, 2016 Plaintiff was alert, cooperative, calm, and did not have an anxious or depressed affect. (AR 333). She reported irritability, anxiety 7/10, depression 5/10, and did not want to try Trazodone because of sleeping in the wash. She continued to drink 8-12 beers and smoke marijuana daily. The provider documented that Plaintiff had a decrease in depression and nightmares and was having a partial response to Lexapro. (AR 334). Abilify was added to address depression, irritability, and impulsivity. (AR

334–35).

On May 12, 2016 Plaintiff had a good mood and was relaxed. (AR 532). She reported anxiety 7/10, depression comes and goes, improved sleep, mood more stable, and ongoing anger and irritability. Plaintiff's mood was stabilizing and depression and anxiety manageable. (AR 533).

On May 25, 2016 Plaintiff reported she was doing well and taking her medications daily. (AR 476).

On June 1, 2016 Plaintiff reported she was doing good, taking her medications, and going to Banner for counseling. (AR 477).

On June 23, 2016 Plaintiff reported her mood was good and she was cutting back on alcohol. (AR 536). She had an increase in symptoms after discontinuing her meds for a colonoscopy; after restarting meds a week ago her mood was stable and symptoms were at baseline, and she was managing her depression and anxiety well. (AR 536–37).

On August 4, 2016 Plaintiff reported she was anxious and had an increase in nightmares. (AR 540). Overall her mood was stable and she was managing her depression. Trazadone was restarted to improve sleep and Naltrexone added to reduce alcohol consumption. (AR 541).

On September 1, 2016 Plaintiff's mood was stable and depression manageable, anxiety ongoing, and reduced irritability. (AR 543).

On November 9, 2016 Plaintiff reported her mood was great and that others had commented on her reduction in anger and anxiety and improved impulse control. (AR 547).

On December 22, 2016 Plaintiff reported her medications work and she is fine when she takes them. (AR 482). She can see better out of her left eye now after having surgery. At an annual assessment that same date Plaintiff's mood was agitated, anxious, calm, depressed, and irritable, she was cooperative and restless, had an angry, restricted, and anxious affect, normal concentration, and insight and judgment were poor. (AR 486). With medication she experienced PTSD, anxiety, and depression 1-2 times out of 2

months, and without medication, daily. (AR 487). Improvement was documented as learning and using effective coping skills. (AR 488).

On February 1, 2017 Plaintiff's mood was stable, anger and anxiety well-managed, and impulse control within normal limits. (AR 550). She was sleeping better and no longer needed Trazadone.

On May 3, 2017 Plaintiff's mood was stable and medications were helpful for managing symptoms. (AR 554).

On July 3, 2017 Plaintiff stated she was doing good and only drinking a 6-pack a day because it was hot out. (AR 485).

On July 13, 2017 Plaintiff reported she was happy, loved her husband and dogs, and was managing her symptoms and taking her medications. (AR 489).

On July 14, 2017 Plaintiff had recent stressors with the death of a friend and being forced out of the wash but was still taking her medications and her mood was stable. (AR 557).

On October 2, 2017 Plaintiff had an increase in situational anger, depression, and anxiety due to stressors in her life, but her functioning was not impaired. (AR 560).

B.    State Agency Consulting Physicians

On July 14, 2016 Plaintiff saw Dr. Glenn Marks for a psychological evaluation. Dr. Marks noted a history of physical and sexual trauma, homelessness, and that Plaintiff was receiving medication and biweekly counseling. (AR 376). Plaintiff stated she was anxious and tense around others, avoids others and prefers to stay by herself, if others approach her too close she becomes angry and at times yells, and has nightmares once a week. She has ongoing anxiety worse in unfamiliar situations and she becomes anxious and angry when things don't go her way. Sleep is markedly improved with her current medications. Plaintiff reported drinking a 12-pack of beer and smoking marijuana daily, and past use of meth and cocaine. (AR 377). On exam Plaintiff was observed to be anxious and mildly shaking throughout the evaluation, affect was varied, she was polite, demure, and cooperative, thought processes were linear, logical, and goal-directed, she

had average intellectual functioning, and scored 30/30 on the MMSE.

Dr. Marks diagnosed PTSD, anxiety, alcohol dependence, and cannabis abuse. (AR 377–78). Dr. Marks opined that Plaintiff's capacity for understanding and memory,[2] sustained concentration and persistence,[3] and adapting to change[4] were all sufficient. (AR 379). He further opined that as to social interaction,[5]

> Ms. Fuhlman appears to be both anxious and shy when she is around others. She avoids interactions with others and reports that unless she is familiar with the people with whom she interacts, she becomes quite defensive and prone towards anger. It is questionable whether she has the capacity, in her current state, of attending work in a timely and consistent manner, with appropriate levels of hygiene.

(AR 379).

C.   Plaintiff's Testimony

On a function report dated October 16, 2015 Plaintiff reported she lives in a wash and spends her days flying a sign, taking care of her dogs, cooking, and gathering wood and getting water. (AR 156–57, 158). She needs help carrying wood and water and ringing out the laundry. (AR 158). Her sleep is affected by shoulder pain and hot flashes; she has difficulty dressing and brushing her hair because she can't lift her shoulder. (AR 157). Plaintiff uses public transportation and shops in stores for groceries, and she spends time with others daily panhandling and sitting by the campfire. (AR 159–60). Plaintiff reported she had no problems getting along with others, does not finish what she starts, and can follow written and spoken instructions. (AR 161). Her conditions affect her ability to lift, stand, reach, see, remember, concentrate, and understand; she is blind in her left eye; and she can walk for one mile before needing to rest. She does not handle stress well, hates changes in a routine, and is very irritable. (AR 162).

---

[2] Defined as ability to understand and remember simple instructions, detailed instructions, and work-like procedures
[3] Ability to carry out simple instructions, maintain attention and concentration, and maintain regular attendance
[4] Ability to respond appropriately to changes in the work setting, be aware of normal hazards, and take appropriate action
[5] Ability to get along with co-workers, respond appropriately to supervision, maintain socially appropriate behavior, and adhere to basic standards of neatness

On an exertional daily activities questionnaire dated November 18, 2015 Plaintiff reported her boyfriend did the cooking due to her blindness and physical pain; she has pain in both arms affecting her lifting, carrying, and writing. (AR 164). She can walk ¼ mile, it causes pain in her knee and lower back, and she can carry a gallon of water. She also has PTSD and mood swings and fluctuates from happy to sad in seconds, cries daily, and throws things when angry. Plaintiff takes ibuprofen every 4-6 hours and uses a splint on her right wrist. (AR 166).

On a function report dated May 23, 2016 Plaintiff reported she could not work around food because of hepatitis C, and her back, wrists, and shoulder always hurt. (AR 177). She spends her days watching her dogs, listening to the radio, cleaning camp, visiting with friends, cooking, and napping. (AR 178). She has trouble with dressing and caring for her hair because of her shoulder and trouble sleeping because of shoulder pain, hand numbness, and hot flashes. (AR 178–79). She can walk for ½ mile, pay attention for 15 minutes, follows spoken instructions well, and does not follow written instructions well. (AR 183). Plaintiff reported she got along well with authority figures but did not handle stress or changes well. (AR 181).

On a disability reported dated September 16, 2016 Plaintiff reported suffering from anxiety and bi-polar symptoms daily; she goes from being happy to breaking into tears multiple times a day and can snap at any time. (AR 193). She is hyperactive and feels she always needs to be doing something but can't because of pain. She can sleep through a whole day and night from depression.

At the hearing before the ALJ, Plaintiff testified that she had not looked for work since filing her application and that she made money by panhandling. (AR 32). She has not worked for the past 15 years because of her PTSD; she gets nervous being around a lot of people. (AR 33–34). She was very nervous in the waiting room before the hearing, but her husband was there with her. (AR 34). Plaintiff's PTSD started when her father passed away in 1980, and then she had a series of traumas including being raped, gang banged, stabbed, and beaten by her previous partners. (AR 36).

- 8 -

Plaintiff sees a counselor at Pathways once or twice a year to get her bus pass. (AR 42). She does not like to take Trazadone because she needs to be alert at night for safety reasons, not because she doesn't want to sleep. (AR 36–37).

Plaintiff drinks about six beers per day and gets marijuana from people on the corner. (AR 33). If she stops drinking her PTSD shows up and then she is scared, nervous, and can't concentrate on anything; it helps her symptoms. (AR 37, 42). Plaintiff moved from Phoenix to Tucson in 2000 or 2001 and has not used meth since that time; the Pathways note from 2016 stating she used meth once a month is incorrect. (AR 37–39). She has not used crack for the last two years. (AR 40).

Physically Plaintiff has pain in her back and shoulders; it feels like her back is out of place and it hurts to hold her arms over her head. (AR 40). She can walk for four blocks before taking a 10-15 minute break; she could not panhandle for eight hours because she couldn't stand that long; she only does one 1-hour shift each day. (AR 40–41).

D.    Vocational Testimony

At the hearing before the ALJ, Thomas Sartoris testified as a vocational expert. The ALJ asked Sartoris to assume an individual of Plaintiff's age and educational background with no medically determinable physical impairments who could do unskilled work at any exertional level with the following mental limitations: understand, remember, and carry out at least simple instructions; make simple work-related decisions and abide by a schedule; respond appropriately to supervisors, co-workers, and social interactions in a work setting with reduced social contact; deal with at least minor changes in work routines; and necessary contact with co-employees, supervisors, and the general public should be at most brief, superficial, and intermittent. (AR 43–44). The ALJ further clarified that the unskilled work would be simple, repetitive tasks requiring only one or two-step directions. (AR 45). Sartoris testified that such a person could perform jobs such as scrap sorter, hand packager, and assembler of cutlery, hand tools, and hardware. (AR 44–46).

For the second hypothetical, the ALJ added the social limitation from Dr. Marks's CE exam. (AR 48). Sartoris testified that if Dr. Marks's opinion were taken into account, Plaintiff could not sustain any jobs in the competitive labor market. (AR 48).

E.    ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of anxiety disorder and polysubstance abuse. (AR 12). The ALJ found that Plaintiff's hepatitis C, liver problems, shoulder problems, left eye blindness, colitis, right knee cellulitis, right plantar wart, and diffuse myalgia with back pain were nonsevere. The ALJ summarized the medical testimony and found that Plaintiff's conditions were addressed with conservative treatment measures and that there was no evidence of ongoing issues limiting Plaintiff's functioning. (AR 13–14).

The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The ALJ found Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitations in ability to concentrate, persist, or maintain pace; and no limitations affecting ability to adapt or manage herself. (AR 15).

The ALJ also considered whether Paragraph C criteria were satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The ALJ found that Plaintiff's mental impairment had persisted for more than two years and that she was receiving treatment in the form of medication management; however, the ALJ found that the evidence failed to show that Plaintiff had achieved only marginal adjustment. (AR 15–16). The ALJ therefore found that Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.06 for anxiety and obsessive-compulsive disorders. (AR 14).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent because Plaintiff had reported improvement in her behavioral health symptoms with medication compliance, and because Plaintiff was able to care for herself and her dogs despite living outdoors in a

camp, able to seek medical attention as needed, and able to use public transportation. (AR 17). The ALJ also stated that Plaintiff's statements were not entirely consistent with the medical evidence and other evidence of record for the reasons explained in the decision.

The ALJ gave limited weight to CE Dr. Marks's opinion because the opinion was based on a single examination, he did not review the treatment records, his findings were largely based on Plaintiff's self-report, and Plaintiff scored in the normal range of cognitive functioning. (AR 19). The ALJ gave greater weight to the state agency psychological consultant, Dr. Mertens's opinion, because he reviewed a longitudinal record of Plaintiff's treatment and his findings were consistent with the record available at hearing level.

The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: Plaintiff is able to understand, remember, and carry out at least simple instructions; make simple work-related decisions and abide by a schedule; respond appropriately to supervisors, co-workers, and social interactions in a work setting with reduced social contact; deal with at least minor changes in work routines; and her necessary contact with co-workers, supervisors, and the general public should be brief, superficial, and intermittent. (AR 16). The ALJ found that Plaintiff had no PRW but determined Plaintiff could perform other jobs existing in significant numbers in the national economy including recycling scrap sorter, hand packager, and cutlery assembler. (AR 20). The ALJ therefore concluded Plaintiff was not disabled. (AR 21).

## III.    Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4),

416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id*. (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV.    Discussion

Plaintiff argues that the ALJ erred by failing to analyze Plaintiff's substance abuse under SSR 13-2p to determine whether it was material to the determination of disability. Plaintiff also argues that the ALJ failed to analyze Plaintiff's PTSD separately from her anxiety disorder, and that the ALJ failed to perform a proper analysis of the C criteria of the 12.00 Listings of Impairments. Plaintiff further argues that the ALJ failed to account for any limitations caused by Plaintiff's physical impairments, that the ALJ gave improper weight to Dr. Marks's consultative examiner opinion, and that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony regarding her social functioning.

The Commissioner argues that to the extent the ALJ failed to comply with SSR 13-2p, any error was harmless. The Commissioner further argues that the ALJ reasonably evaluated Plaintiff's mental impairments, reasonably evaluated the paragraph C criteria, reasonably evaluated Dr. Marks's opinion, and reasonably found that Plaintiff's

subjective complaints regarding her social functioning were unreasonable. Finally, the Commissioner argues that Plaintiff failed to meet her burden to show that she had any limitations resulting from non-severe physical impairments.

The Court finds that the ALJ did not err in failing to perform a materiality analysis pursuant to SSR 13-2p. The Court further finds that the ALJ did not commit harmful error in failing to separately analyze Plaintiff's PTSD and did not err in analyzing the C criteria. The Court also finds that the ALJ's RFC assessment included all limitations that the ALJ found credible and supported by the record. Finally, to the extent that the ALJ erred in assigning limited weight to Dr. Marks's opinion or in finding that Plaintiff's subjective symptom testimony regarding her social functioning was inconsistent, any error was harmless. Accordingly, the Court finds that the Commissioner's decision should be affirmed.

A.    SSR 13-2p

Plaintiff first argues that the ALJ erred by failing to perform a proper analysis under SSR 13-2p to determine whether substance abuse was material to the disability determination. (Doc. 17 at 8). The Commissioner contends that "[t]he materiality of DAA [drug addiction or alcoholism], however, only becomes an issue if there is an initial finding that the claimant is disabled considering all of her impairments, including those caused by DAA." (Doc. 22 at 3) (citing SSR 13-2p). Thus, the materiality analysis is only required if the claimant is found disabled when the effects of DAA are taken into account. If there is no disability finding, the ALJ does not proceed to the materiality determination. *See* 20 C.F.R. §416.935(b)(2). The Commissioner is correct.

Pursuant to 42 U.S.C. § 423(d)(2)(C), an individual is not disabled "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." In *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) the Ninth Circuit held that "'[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application of [42 U.S.C.] § 423(d)(2)(C).'" (quoting *Drapeau v. Massanari*, 255

F.3d 1211, 1213 (10th Cir. 2001) (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)). As the *Bustamante* court explained,

> It follows that an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry. *See Drapeau*, 255 F.3d 1211, 1214 ("The ALJ cannot begin to apply [42 U.S.C.] § 423(d)(2)(C) properly when, as here, he has not yet made a finding of disability.") In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R. §§ 404.1535, 416.935.

262 F.3d at 955; *see* SSR 13-2p; *see also Para v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007); *Hoban v. Colvin*, 2016 WL 4059200, *3 (D. Or. July 27, 2016) ("Bustamante requires a two-step process.").

Here, the ALJ conducted the five-step inquiry and determined that Plaintiff was not disabled because she was able to do other work. Because the ALJ did not find that Plaintiff was disabled, the ALJ was not required to conduct the five-step inquiry a second time to determine whether DAA was material to the disability finding.[6] *See* SSR 13-2p at *4 ("Under the Act and our regulations, we make a DAA materiality determination only when . . . we find that the claimant is disabled considering all impairments, including the DAA."). Accordingly, the Court finds no error on this point.[7]

---

[6] Furthermore, the ALJ specifically found that Plaintiff's polysubstance use disorder was not a contributing factor material to the determination of disability because "[w]hile there is evidence of ongoing drug and alcohol abuse, the overall evidence indicates that the claimant has a mental impairment, unrelated to her abuse, which restricts her ability to interact with others in some work-related situations." (AR 21). Not only does this directly contradict Plaintiff's argument as noted in footnote 7 below, but to the extent that the ALJ did make a DAA materiality finding even though he was not required to, the finding was in Plaintiff's favor.

[7] The Court further rejects Plaintiff's argument that "despite the ALJ's protestations to the contrary, it is clear from the decision that the plaintiff's drug and alcohol use played a part in the determination of non-disability" or that it was error for the ALJ to consider Plaintiff's substance abuse in analyzing Plaintiff's subjective symptom testimony. (Doc. 17 at 9). It is clear to the Court from a plain reading of the ALJ's decision that the ALJ

- 15 -

B.    PTSD

Plaintiff next argues that the ALJ failed to analyze her medically determinable impairment of PTSD separately from the umbrella category of anxiety disorder. (Doc. 17 at 12). The Commissioner contends that to the extent the ALJ erred in failing to consider Listing 12.15(A) (trauma and stressor-related disorders) separately from Listing 12.06(A)(1) (anxiety disorders), any error is harmless because the relevant requirements of the listings are the same. (Doc. 22 at 7). Specifically, to establish the required level of severity, Plaintiff must satisfy the requirements of both the A and B criteria, or the two-part requirements of the C criteria.[8] *Id.* at 8. While the A criteria differ for Listings 12.06 and 12.15, the B criteria are the same; thus, the ALJ's error in omitting reference to listing 12.15 was harmless because the ALJ found that Plaintiff did not satisfy the B criteria[9] and therefore the ALJ would have reached the same result absent the error. *Id.* at 8–10.

Mental impairments are evaluated using the technique outlined in 20 C.F.R. § 404.1520a. The Commissioner must first evaluate the claimant's symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). If the Commissioner determines that the claimant does have a medically determinable mental impairment, the Commissioner must specify the findings that substantiate the presence of the impairment, and then rate the degree of functional limitation resulting from the impairment. *Id*.

Listings for mental disorders are arranged into separate categories. Listings 12.06

---

did not improperly consider Plaintiff's DAA when making the disability determination, and further it is not legal error to consider a claimant's DAA when assessing subjective symptom testimony. *See Missell v. Colvin*, 2014 WL 2048082, *4–5 (D. Ariz. May 19, 2014) (rejecting claimant's argument that ALJ can only consider DAA if ALJ is going to presume claimant is disabled and do a DAA analysis, and further finding ALJ did not err by considering claimant's DAA in making credibility determination); *Curry v. Colvin*, 2015 WL 4067193, *4 (D. Or. May 11, 2015) ("ALJ may make reference to a claimant's substance abuse as relevant to corollary matters (*e.g.*, evidence inconsistent with a claimant's testimony) without conducting the drug-and-alcohol analysis").
[8] Discussed in section C below.
[9] The Commissioner notes that Plaintiff does not challenge the ALJ's paragraph B criteria findings and thus has forfeited any objection.

and 12.15 have three paragraphs, designated A, B, and C. To meet the listing, a claimant's mental disorder must satisfy the requirements of both Paragraphs A and B, or the requirements of both Paragraphs A and C. Paragraph A of each listing includes the medical criteria. Paragraph B includes the functional criteria to assess how a claimant's mental disorder limits areas of mental functioning used in a work setting. The Commissioner considers four areas of functional limitation: ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation is rated as none, mild, moderate, marked, or extreme. *Id.* The Commissioner then determines the severity of the mental impairment. 20 C.F.R. § 404.1520a(d). If the Commissioner rates the degree of limitation as "none" or "mild," the Commissioner will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id.*

As both Plaintiff and the Commissioner note, the listings for anxiety disorder and PTSD have distinct criteria under Paragraph A. *See* Doc. 17 at 13. However, the Paragraph B criteria are the same: both listings require extreme limitation of one, or marked limitation of two, of the four areas of mental functioning. Here, the ALJ found Plaintiff had mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitations in ability to concentrate, persist, or maintain pace; and no limitations affecting ability to adapt or manage herself. (AR 15). Thus, to the extent that the ALJ erred in failing to separately analyze the Paragraph A criteria for Listing 12.15, any error was harmless because the Paragraph B criteria are the same for both Listing 12.06 and 12.15, and the ALJ found no marked or extreme limitations. Therefore, even if the ALJ had separately analyzed and found that Plaintiff satisfied the Paragraph A criteria for Listing 12.15, Plaintiff would still not meet the listing because the Paragraph B criteria were not satisfied. *See Morris v. Astrue*, 2012 WL 2912725, *6 (D. Ariz. July 16, 2012) (finding harmless error where ALJ analyzed B

criteria that were identical in both listings; "Thus, even if the choice of listing could constitute an error, it would not 'negate the validity of the ALJ's ultimate conclusion'" (quoting *Batson*, 359 F.3d at 1197)).

Further, while the ALJ found that Plaintiff had the severe impairments of anxiety disorder and polysubstance abuse, the ALJ also noted that Plaintiff alleged PTSD and stated:

> I am cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. Accordingly, the claimant's psychological symptoms and their effect on her functioning have been considered together, instead of separately, regardless of the diagnostic label attached.

(AR 12). Thus, it is evident from the ALJ's decision that he did take all of Plaintiff's alleged impairments into account, whether severe or not, when making the disability determination.[10] *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (ALJ is required to consider all of a claimant's impairments, whether severe or not, in assessing RFC); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir. 1990) ("The regulations merely require the Secretary to review the symptoms and make specific findings essential to the conclusion . . . It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." (internal quotations and citations omitted)). Accordingly, the Court finds no error on this point.

C.    C Criteria

Plaintiff argues that the ALJ failed to perform a proper analysis of the C criteria of the 12.00 Listings of Impairments and contends that the record documents that she does not achieve "marginal adjustment" without substantial psychosocial supports. (Doc. 17 at 14). The Commissioner contends that the ALJ found Plaintiff failed to show that she had achieved only marginal adjustment and that while Plaintiff may argue for a more

---

[10] The Court rejects Plaintiff's argument that the ALJ avoided analyzing Listing 12.15 to avoid analyzing the limiting effects of her PTSD symptoms.

favorable interpretation of the record, the ALJ's rational interpretation is entitled to deference. (Doc. 22 at 12). The Court agrees.

As explained above, in order to meet Listing 12.06 or Listing 12.15, the claimant's mental disorder must satisfy the requirements of both Paragraphs A and B, or the requirements of both Paragraphs A and C. While the ALJ did not separately analyze the A criteria for Listing 12.15, the C criteria for both listings are the same.

The Paragraph C criteria of the 12.00 Listings of Impairments are used to evaluate "serious and persistent mental disorders." To satisfy the C criteria, the claimant must show: (1) a medically documented history of the mental disorder over a period of at least two years; (2) evidence that the claimant relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial supports, or a highly structured setting to diminish signs and symptoms of the mental disorder; and (3) evidence that, despite diminished signs and symptoms, the claimant has achieved only marginal adjustment. Listing 12.00(G)(2). "Marginal adjustment" means that the claimant's adaptation to the requirements of daily life is fragile and that the claimant has minimal capacity to adapt to changes in environment or to demands not already part of daily life. Listing 12.00(G)(2)(c). The ALJ will consider that a claimant has achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of symptoms and deterioration in functioning, for example if the claimant is unable to function outside of the home without substantial psychosocial supports. *Id.*

Here, the ALJ found that Plaintiff's mental impairment had persisted for more than two years and that she was receiving treatment in the form of medication management. (AR 15). However, the ALJ found that the evidence failed to show that Plaintiff had achieved only marginal adjustment; rather, the record documented that Plaintiff was able to use public transportation, seek and obtain medical treatment and food stamps, cook and care for her pets, and panhandle for money. (AR 16). The ALJ therefore found that Plaintiff's mental impairment did not satisfy the C criteria.

Plaintiff contends that she "demonstrably does not achieve 'marginal adjustment'"

and points to the following: Plaintiff sleeps in a wash and panhandles for money; Plaintiff is homeless because she has two dogs; Plaintiff does ride the bus and cares for herself and her dogs, but these are normal activities for homeless people; Plaintiff avoids people she does not know; and Plaintiff has a set daily routine and deviations from it cause her anxiety. (Doc. 17 at 15).

Plaintiff essentially asks the Court to reweigh the evidence more favorably to her, but Plaintiff's alternate interpretation is not enough to assign error to the ALJ's findings. "While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "When the evidence is susceptible to more than one rational interpretation, and the [ALJ's] conclusion is one such rational interpretation, that interpretation must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ's determination that Plaintiff's mental impairment did not meet the Paragraph C criteria is supported by substantial evidence in the record as whole. The Court finds no error.

D. <u>Physical Impairments</u>

Plaintiff argues that because the ALJ found Plaintiff had no severe physical impairments at Step Two, this resulted in an RFC that did not account for any of Plaintiff's physical symptoms. (Doc. 17 at 17). Plaintiff's argument is misplaced.

RFC is "the most [a claimant] can still do despite her limitations," and includes assessment of the claimant's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what she can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The Commissioner retains the ultimate responsibility for assessing a claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ was required to assess Plaintiff's RFC based on all the record evidence, including medical sources, examinations, and information provided by Plaintiff. 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). Further, "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's

medically determinable impairments, including those that are not severe." *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049. However, the ALJ need not include all possible limitations in the assessment of what a claimant can do, but rather is only required to ensure that the RFC "contain[s] all the limitations that the ALJ found credible and supported by the substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *see also Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan. 14, 2015) ("An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony.").

Here, the ALJ found Plaintiff could perform a range of work with non-exertional limitations. (AR 16). The record reveals minimal objective evidence to support Plaintiff's physical complaints, and there are no medical opinions recommending limitations due to Plaintiff's alleged physical impairments.[11] While Plaintiff argues for a more favorable interpretation of the evidence, the Court finds that the ALJ's RFC assessment contains all of the limitations that the ALJ found credible and supported by substantial evidence in the record and is consistent with the restrictions identified in the medical testimony.

E.    Dr. Marks

Plaintiff argues that the ALJ erred by affording limited weight to Dr. Glenn Marks's CE opinion. (Doc. 17 at 18). The Commissioner contends that the ALJ's reasoning was specific, legitimate, and supported by substantial evidence. (Doc. 22 at 14).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat

---

[11] For example, Plaintiff's wart was successfully treated (AR 363, 430, 433, 447, 448, 452, 455, 457, 459), and although Plaintiff complained of back pain, she had normal exams and good relief with Ibuprofen and Naproxen (AR 253, 254, 293, 424). *See also* Defendant's Brief, Doc. 22 at 13–15, detailing ALJ's summary of Plaintiff's physical impairments and finding no evidence of functional limitations or ongoing treatment.

the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (internal quotations and citations omitted). "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

Here, the Court finds that to the extent that the ALJ erred in assigning limited weight to Dr. Marks's opinion, any error was harmless. Dr. Marks opined that the only limitations Plaintiff had from a psychological standpoint were regarding social interaction. Specifically, he found:

> Ms. Fuhlman appears to be both anxious and shy when she is around others. She avoids interactions with others and reports that unless she is familiar with the people with whom she interacts, she becomes quite defensive and prone towards anger. It is questionable whether she has the capacity, in her current state, of attending work in a timely and consistent manner, with appropriate levels of hygiene.

(AR 379). Dr. Mertens, the state agency psychologist, similarly opined that Plaintiff had

moderate limitations in maintaining social functioning. (AR 70).[12] Specifically, Plaintiff would be moderately limited in her ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with peers or coworkers, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (AR 73). Dr. Mertens further opined that Plaintiff could do unskilled work and respond appropriately to supervisors, co-workers, and social interactions in a work setting with reduced social contact. (AR 74). This opinion is consistent with Dr. Marks's opinion that Plaintiff appears to be anxious and shy around others and reports that she avoids interactions with people she doesn't know. Furthermore, both opinions are consistent with the ALJ's RFC assessment that Plaintiff was able to respond appropriately to supervisors, co-workers, and social interactions in a work setting with reduced social contact and that her necessary contact with co-workers, supervisors, and the general public should be brief, superficial, and intermittent. (AR 16).

Thus, to the extent that the ALJ did commit any error in assigning limited weight to Dr. Marks's opinion, the Court finds that any error was harmless because the ALJ's RFC assessment adequately reflects the social interaction limitations noted by both Dr. Marks and Dr. Mertens.[13]

F.    Subjective Symptom Testimony

"An ALJ's assessment of symptom severity and claimant credibility is entitled to great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015)

---

[12] The Court further notes that Dr. Mertens opined that Plaintiff had more restrictions than Dr. Marks found, including mild restriction in activities of daily living and maintaining concentration, persistence, or pace, and moderate limitations in adapting to changes in the work setting. (AR 70, 73). The ALJ also made detailed findings under the Paragraph B criteria and similarly found that Plaintiff had mild restriction in understanding, remembering, or applying information, mild limitations in concentration, persistence, or pace, and moderate limitations in interacting with others. (AR 15).
[13] The Court further notes that Dr. Marks did not actually opine as to a specific limitation, but rather stated that it was "questionable whether she has the capacity, in her current state, of attending work in a timely and consistent manner." Thus, again, to the extent that the ALJ committed any error in assigning the opinion limited weight, the error was harmless because Dr. Marks did not opine as to a specific mental limitation that the ALJ did not incorporate into the RFC assessment.

(internal quotations and citations omitted).[14] This is because "an ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation omitted).

While questions of credibility are functions solely for the ALJ, this Court "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Comm'r Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d

---

[14] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." *Id*. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." *Id*. This ruling is consistent with the previous policy and clarifies rather than changes existing law. Under either ruling, the ALJ is required to consider the claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency." *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an evaluation of claimant's testimony and contain the same factors for consideration).
    "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

1273, 1282 (9th Cir. 1996)).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the objective medical evidence." *Robbins*, 466 F.3d at 887. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations and citations omitted).

Here, the ALJ did not make a finding that Plaintiff was malingering; therefore, to support his discounting of Plaintiff's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons.

Plaintiff argues that the ALJ discounted her allegations regarding her difficulty with social functioning primarily because she described herself as a "people person" during her psychiatric evaluation at Pathways. (Doc. 17 at 20). Plaintiff contends that the remainder of the evaluation documents her mental health symptoms including flashbacks, nightmares, exaggerated startle reflex and hypervigilance, and times when she snaps, screams, and throws things. Thus, Plaintiff argues that this optimistic description of herself as a "people person" appears to have no relevance to her actual level of social functioning and therefore cannot be a clear and convincing reason to discount her testimony. *Id.* at 21.

In contrast to Plaintiff's argument, the ALJ did not state that he primarily

discounted Plaintiff's allegations because she described herself as a people person,[15] nor is that a reasonable inference from the ALJ's opinion. The Court will not read into the record something that the ALJ did not actually say. Rather, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because she had reported improvement in her behavioral health symptoms with medication compliance. (AR 17); *see also* AR 18 (ALJ noting that Pathways progress notes consistently reported good symptom relief with medication compliance). Plaintiff contends that the record reflects that she suffers from debilitating symptoms more often than not, and that a few records documenting improvement are not a clear and convincing reason to discount her testimony. (Doc. 17 at 24).

The Court's review of the record shows that at times Plaintiff's symptoms improved and at times they worsened, but the longitudinal record documents that Plaintiff did have improvement with medication compliance. While the Court recognizes that "it is error to reject a claimant's testimony merely because symptoms wax and wane," *Garrison*, 759 F.3d at 1017, in this case the record taken as a whole does document a trend of improved mental health symptoms with medication compliance, both as reported by Plaintiff and as noted by her providers.[16] The Court further finds that the ALJ was sensitive to Plaintiff's mental health complaints, as reflected in the RFC assessment limiting Plaintiff to a work setting with reduced social contact. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (ALJ's decision finding claimant less than fully credible was valid, despite errors identified; ALJ did not wholly reject claimant's allegations and RFC was largely consistent with his testimony).

The ALJ also noted that Plaintiff was able to care for herself and her two dogs

---

[15] This reference actually appears in the ALJ's paragraph discussing the weight assigned to Dr. Marks's opinion (AR 19).

[16] For example, on November 9, 2016 Plaintiff reported her mood was great and that others had commented on her reduction in anger and anxiety and improved impulse control. (AR 547). The following month, Plaintiff reported her medications work and she is fine when she takes them. (AR 482). With medication she experienced PTSD, anxiety, and depression 1-2 times out of 2 months, and without medication, daily. (AR 487). From February through July 2017, Plaintiff was doing well and her medications were effective, even when experiencing stressors due a friend's illness and her home being bulldozed. (AR 485, 489, 550, 554, 557).

despite living outdoors, was able to seek medical treatment as needed, and use public transportation. (AR 17). Plaintiff contends that "[t]here is no inconsistency between the ability to perform basic self-care in an isolated camp in the desert and the inability to tolerate the stress of being among strangers or the normal stressors of a working environment." (Doc. 17 at 23).

Activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112–13. However, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison*, 759 F.3d at 1016 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Here, the Plaintiff's daily activities are relatively limited by virtue of the fact that she lives outdoors in a homeless encampment. Despite this living arrangement, as the ALJ noted, Plaintiff is able to care for herself and her dogs, seek medical treatment as needed, and use public transportation. (AR 156–63; 177–84). Plaintiff also reported she spends time with her friends and husband and panhandles. *Id.* Thus, to the extent that Plaintiff alleges a totally debilitating impairment, her ability to perform these activities despite her living situation belies that contention. On the other hand, Plaintiff's daily activities are not entirely inconsistent with her testimony regarding her mental health symptoms, such as not handling stress or changes well (AR 161, 181) and being nervous around a lot of people (AR 33–34). However, while Plaintiff's ability to care for herself and her dogs does not necessitate a finding that she has no difficulties in social

functioning, the record also does not compel the conclusion that Plaintiff urges that she is completely unable to tolerate being around strangers or would be unable to function in a work setting with reduced social contact.[17] *See Missell*, 2014 WL 2048082 at *5 (ALJ found claimant's daily activities were inconsistent with his testimony regarding his daily activities; court noted finding claimant not credible for this reason was different than ALJ finding claimant not disabled for this reason, and substantial evidence supported ALJ's reasoning). Regardless, the Court finds that to the extent that the ALJ erred in finding that Plaintiff's daily activities are inconsistent with her subjective symptom testimony, any error was harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (so long as there remains "substantial evidence supporting the ALJ's decision" and the error "does not negate the validity of the ALJ's ultimate conclusion," such error is deemed harmless and does not warrant reversal); *see also Stout*, 454 F.3d at 1055 (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination"); *Missell*, 2014 WL 2048082 at *6 ("This Court cannot substitute its judgment for the ALJ simply because the evidence could be given more than one possible meaning."). "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162.

In sum, the Court finds that the ALJ provided a clear and convincing, specific reason to find that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because she had reported improvement in her behavioral health symptoms with medication compliance, and to the extent that Plaintiff alleges a totally debilitating impairment, her ADL contradict that. Further, even if the ALJ did err in relying on any of the above reasons to find that Plaintiff's subjective testimony was not entirely consistent, any error was harmless because the ALJ's ultimate disability determination was adequately supported by substantial evidence in the record.

---

[17] For example, while Plaintiff stated that she does not handle stress well and gets nervous around others, she also reported no problems in getting along with others or with authority figures. (AR 161, 181).

*See Batson*, 359 F.3d at 1197.

**V.     Remedy**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

Here, the undersigned finds that the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, in light of the foregoing,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and close its file on this matter.

**Dated this 7th day of February, 2019.**

Eric J. Markovich
United States Magistrate Judge